A COMPLAINT UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. § 1983

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ROY McLAUGHLIN, JR.                    399370
                                       _____
                                       Inmate (DOC) number

_____

_____

(Enter above the full name of each
plaintiff in this action.)

VERSUS

N. BURL CAIN, WARDEN L.S.P.
ROBERT BUTLER, ASSITANT WARDEN L.S.P.
KEVIN GROOM, CORR. OFFICER L.S.P.
MARK SHARP, CORR. OFFICER L.S.P.
JOHN DOE NO. ONE, CORR. OFFICER L.S.P.
JOHN DOE NO. TWO, CORR. OFFICER L.S.P.
JOHN DOE NO. THREE, CORR. OFFICER L.S.P.

(Enter above the full name of each
defendant in this action.)

Instructions for Filing Complaint by Prisoners
Under the Civil Rights Act, 42 U.S.C. §1983.

This packet includes two copies of a complaint form and one copy of the pauper affidavit.

IF YOU ARE A PARISH PRISONER, you must file an original and one copy of your complaint for each defendant you name. For example, if you name two defendants, you must file the original and two copies of the complaint. You should also keep an additional copy of the complaint for your own records.

IF YOU ARE A D.O.C. PRISONER, you must file an original and one copy of your complaint. If the defendants are still employed by the Department of Public Safety and Corrections, only one service copy is needed. Otherwise, you must supply a copy of the complaint and the service address for each defendant no longer employed by the Department of Public Safety and Corrections.

All copies of the complaint must be identical to the original.

The names of all parties must be listed in the caption and in part III of the complaint exactly

the same.

In order for this complaint to be filed, it must be accompanied by the filing fee of $250.00. In addition, the United States Marshal will require you to pay the cost of serving the complaint on each of the defendants.

If you are unable to pre-pay the filing fee and service costs, you may petition the court to proceed in forma pauperis. For this purpose, a pauper affidavit is included in this packet. You must sign the affidavit, and obtain the signature of an authorized officer certifying the amount of money in your inmate account. If pauper status is granted, you will be required to pay an initial partial filing fee and thereafter, prison officials shall be ordered to forward monthly payments from your inmate account until the entire filing fee is paid.

You will note that you are required to give facts. THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS. ALSO, <u>DO NOT INCLUDE EXHIBITS</u>.

When you have completed these forms, mail the original and copies to the Clerk of the United States District Court for the Middle District of Louisiana, 777 Florida Street, Suite 139, Baton Rouge, La. 70801-1712.

I.      Previous Lawsuits

A.  Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?   Yes ( ) No (✓)

B.  If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1.  Parties to this previous lawsuit
    Plaintiff(s): _____ N/A _____

    _____

    Defendant(s): _____ N/A _____

    _____

2.  Court (if federal court, name the district; if state court, name the parish):
    _____ N/A _____

    _____

3.  Docket number: _____ N/A _____

4.  Name of judge to whom case was assigned: _____ N/A _____

    _____

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?):
_____ N/A _____
_____

6. Date of filing lawsuit: ___ N/A ___
7. Date of disposition: ___ N/A ___
C. Have you had any previously filed federal lawsuits or appeals, whether or not related to the issues raised in this complaint, dismissed by any federal court as frivolous, malicious, or for failure to state a claim for which relief can be granted?

     Yes ( )     No (✓)

If your answer is yes, list the civil action numbers and the disposition of each case. You must identify in which federal district or appellate court the action was brought.
_____ N/A _____
_____

II.    Place of present confinement: LOUISIANA STATE PENITENTIARY

A. Is there a prisoner grievance procedure in this institution?
     Yes (✓) No ( )

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?
Yes (✓) No ( )

C. If your answer is Yes:

1. Identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed. CASE NUMBER LSP-2010-0333.

2. What steps did you take? FIRST STEP, grievance submitted JAN 29, 2010. ARP received FEB 3, 2010, and accepted APRIL 23, 2010. FIRST STEP RESPONSE and Disposition date of JUNE 15, 2010. SECOND STEP submitted on June 21, 2010 (self constructed) and states form June 25, 2010.

3. What was the result? FIRST STEP RESPONSE to my Administrative Remedy was denied relative to my complaint. The (45) forty five day time limit for the state to respond to plaintiff's STEP TWO ARP appeal has expired.

D. If your answer is No, explain why not: ___ N/A ___
_____

→ SEE plaintiff's ARP STEP TWO Appeals dated June 21, June 25, 2010. SEE status request for ARP STEP TWO dated July 7th, August 2, 16, 2010.

III.     Parties
         (In Item A below, place your name in the first blank and place your present address in the
         second blank.  Do the same for additional plaintiffs, if any.)

         A.  Name of plaintiff(s)  ROY  M.  McLAUGHLIN, JR.
             Address CAMP J, CUDA 4-R-6  LA. STATE PENITENTIARY ANGOLA, LA. 70712
         In Item B below, place the full name of the defendant in the first blank, his official position
         in the second blank, and his place of employment in the third blank.  Use Item C for the
         names, positions, and places of employment of any  additional defendants.

         B.  Defendant  N. BURL CAIN                              is employed as
         WARDEN                                    at LOUISIANA  STATE
         PENITENTIARY
         C.  Additional Defendants: ROBERT BUTLER, ASSIT. Warden L.S.P. KEVIN
         GROOM, MAJOR L.S.P. MARK SHARP, CAPT. L.S.P. JOHN DOE NO.
         ONE, JOHN DOE NO. TWO, and JOHN DOE NO. THREE are
         correctional OFFICERS of LOUISIANA STATE PENITENTIARY.

IV.     Statement of Claim

        State here as briefly as possible the facts of your case.  Describe how each defendant is
        involved. Include also the names of other persons involved, dates, and places.  Do not given
        any legal arguments or cite any cases or statutes.  If you intend to allege a number of
        related claims, number and set forth each claim in a separate paragraph.  (Use as much space
        as you need.  Attach extra sheets if necessary.)

        PLAINTIFF's rights were violated under the Eigth (8)
        AMENDMENT when the warden, and correctional off-
        icers at LOUISIANA STATE PENITENTIARY deliberatly,
        maliciously, sadistically, and unjustifiably beat and
        assaulted plaintiff violating the law of the UNITED
        STATES CONSTITUTION against cruel and unusual
        Punishment, and were deliberatly indifferent.
                          PLAINTIFF
        PLAINTIFF ROY M. McLAUGHLIN, JR. is and was at

4

all times mentioned herein a prisoner of the STATE OF LOUISIANA in the custody of the LOUISIANA DEP-ARTMENT OF CORRECTIONS. HE is currently confined in the Louisiana State Penitentiary at ANGOLA, LA. 70712.
* SEE additional pages 6-33 for IV. STATEMENT OF CLAIM.

V.    Relief

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases of statutes.  Attach no exhibits. PLAINTIFF prays for injunctive relief from retaliation for filing this Complaint. PLAINTIFF prays for compensatory damages for his physical and emotional injuries in the amount of $350,000, and punitive damages in the amount of $350,000 that plaintiff received from the deliberate, malicious, sadistic, and unjustifiable infliction of pain to plaintiff by defendants.

VI.   Plaintiff's Declaration

1. I understand that I am prohibited from bringing a civil action in forma pauperis if, while I was incarcerated or detained in any facility, I have brought three or more civil actions or appeals in a court of the United States that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

2. I understand that even if I am allowed to proceed in forma pauperis, I am responsible for paying the entire filing fee and any costs assessed by the Court, which, after payment of the partial initial filing fee, shall be deducted from my inmate account by my custodian in installment payments as prescribed by law.

3. I understand that if I am released or transferred, it is my responsibility to keep the Court informed of my whereabouts and failure to do so may result in this action being dismissed with prejudice.

Signed this _30_ day of _AUGUST_____, 200_0_ .

Roy M. Mc Laughlin, Jr.
_____
Signature of plaintiff(s)

(ATTACHED EXTRA SHEETS UNDER SEC. IV STATEMENT OF CLAIM)

## DEFENDANTS

N. BURL CAIN, warden is legally responsible for the operation of
L.S.P., and for the welfare of the inmates.

ROBERT BUTLER, Assit. Warden assist the warden and is legally
responsible for security operations, and for the welfare
of all inmates at L.S.P.

KEVIN GROOM, correctional officer, who at all times men-
tioned in this complaint; held the rank of Major at L.S.P.

MARK SHARP, correctional officer, who at all times mentioned
in this complaint; held the rank of Captain at L.S.P.

JOHN DOE NO. ONE, correctional officer, and presently his rank
is unknown to plaintiff.

JOHN DOE NO. TWO, correctional officer; and presently his
rank is unknown to plaintiff.

JOHN DOE NO. THREE, correctional officer and his rank is un-
known to plaintiff; and all three JOHN DOES employeed at L.S.P.

EACH DEFENDANT is sued individually and in his official
capacity. AT ALL TIMES mentioned in this complaint each
defendant acted UNDER THE COLOR OF STATE LAW.


## IV. FACTS (STATEMENT OF CLAIMS)

### 1.

ON SUNDAY JANUARY 24, 2010 at about 1:20 P.M. the plain-
tiff begun an attempted simple escape from the LOUISIANA
STATE PENITENTIARY's CAMP J. Plaintiff evacuated thru
an opening of the chain link fence on the recreational
yard; and proceeded to climb and cross over two chain
link perimenter gates.

2.

AFTER landing on his feet on the outside of the perimeter gates, plaintiff sprinted about 100 yards to a drainage canal WEST of the camp.

ONCE in the canal plaintiff noticed a very small puncture wound to his left palm caused by barbed wire over gates.

UPON INFORMATION AND BELIEF, plaintiff was seen by security personnel running SOUTH in the drainage canal.

3.

PLAINTIFF evacuated the canal shortly thereafter, turning EAST, and jogged across a cattle pasture and crossing two short barbed wire fences.

AT ABOUT 1:40 P.M., plaintiff surrendered peacefully to WARDEN ROBERT BUTLER who was standing at post with pistol in his right hand near an area known as Beeline.

4.

UPON surrendering to Warden ROBERT BUTLER, plaintiff was ordered to get on his knees, and then ordered belly and face down horizontally on the ground. Thereafter, the Warden approached plaintiff discharging his pistol several times toward the sky to signal security personnel as to his whereabouts.

5.

SECONDS later a middle age officer arrived on scene, and handcuffed plaintiff's hands behind his back, and —

Pg.7

then frisked, and or searched plaintiff's body. The officer
discovered a bag of TRAIL MIX, cashews, small Bic lighter,
vitamins, allergy tablets, and various small cloth items.
 PLAINTIFF was stripped nude from his waist down.

### 6.

MINUTES LATER a pickup truck with several correctional
officers arrived on scene, and one of the officers jog-
ged over to plaintiff, and suddenly without provocation from
plaintiff stomped on the right side of plaintiff's face near
the right eye of plaintiff, and kicked plaintiff two times
in the side of his body.

 WARDEN ROBERT BUTLER stood next to plaintiff lying
belly down on the ground and said nothing to the officer
who assaulted and battered plaintiff.

 PLAINTIFF was able to look up, and peek at the officer
during the assault and battery of plaintiff, and later iden-
tified a photograph of that officer.

### 7.

 UPON INFORMATION AND BELIEF plaintiff's legs were
shackled at the ankles, and then officers violently pulled
plaintiff up off the ground by grabbing and pulling up on
plaintiff's arms causing strains, and or sprains to his
rotary cuff, and elbow joints. Plaintiff was then tossed
deliberately and maliciously head first and belly down onto
the bed of the truck.

Pg - 8.

UPON INFORMATION AND BELIEF, CAPTAIN MARK SHARP intially assaulted and battered plaintiff.

8.

DEFENDANT JOHN DOE number ONE, a white male then slammed the truck's tailgate onto plaintiff's left foot. Plaintiff howled like a canadian wolf due to the unbearable pain.

THAT slamming of the tailgate on plaintiff's foot may have been the causation of plaintiff's left fractured toe, or fractured moments later when a second assault and battery begun of plaintiff.

JOHN DOE postioned himself as the truck's driver after slamming the truck's tailgate.

9.

SECONDS LATER defendant Warden N. BURL CAIN arrived at the surrender site, and then defendant Captain MARK SHARP pulled plaintiff up and off his belly onto a sitting position. Warden N. BURL CAIN then grabbed plaintiff by the hair with his hand, and slammed plaintiff's head (2) two times onto the upper horizontal edge of the closed tailgate. Seconds later the defendant warden Cain screamed at the plaintiff "Roy you're going into a paper gown". Warden Cain then ordered correctional officers Captain MARK SHARP, and UPON INFORMATION AND BELIEF, defendant MAJOR KEVIN

Pg. 9a.

GROOM an african-american, defendant JOHN DOE number TWO, and possibly a defendant JOHN DOE number THREE, all postioned in the bed of the truck around the plaintiff who was belly down again to transport plaintiff to the hospital. JOHN DOE number ONE drove the truck.

10.

AS the truck drove away Captain MARK SHARP was sitting up on the wheel well, or upper edge of the truck's bed at the plaintiff's right side.

PLAINTIFF was head first and belly down hancuffed behind his back at all times, except for Warden Cain Slamming plaintiff's head two times onto the truck.

JOHN DOE number TWO was position to plaintiff's left. Plaintiff's head was turned to the right, or toward defendant MARK SHARP.

UPON INFORMATION AND BELIEF, defendant KEVIN GROOM was positioned at the left rear of the truck's bed, and sitting next to defendant JOHN DOE number TWO, who was positioned directly across from defendant MARK SHARP.

11.

DURING THE TRANSPORT of plaintiff to the penitentiary's hospital, defendant MARK SHARP deliberately, maliciously, sadistically, and expressing gargantuan cowardness, assaulted and beat the fifty Two year old plaintiff.

Pg. 10

DEFENDANT MARK SHARP and defendant JOHN DOE number Two beat plaintiff with their asp, or metal extension batons, comonly referred to as sticks about (30) thirty times on the rear of the plaintiff's body, which included his feet, which may have caused plaintiff's fractured toe, rear legs, buttock, hands, elbows and skull.

AT ONE POINT during the beating of the (52) fifty Two year old plaintiff, defendant MARK SHARP ordered defendant JOHN DOE number Two saying "Try and crack his skull." JOHN DOE number Two struck plaintiff one time on the back of plaintiff's head with defendant's metal stick. Defendant MARK SHARP then asked JOHN DOE number Two saying, "Did you crack his skull", and JOHN DOE responded "I don't think so." Captain MARK SHARP ordered JOHN DOE saying, "hit him again", and plaintiff was struck a second time on the back of his head. AFTER the second blow to the plaintiff's head, JOHN DOE said, "That boy has got a hard head."

12.

DEFENDANT's MARK SHARP AND JOHN DOE number Two also kicked, and punched the plaintiff several times onto the side of his body from their sitting positions.

13.

UPON INFORMATION AND BELIEF, defendant MAJOR KEVIN GROOM sat by and said nothing, or did nothing

Pg. 11.

to stop the beating of plaintiff during plaintiff's transport to the hospital.

PLAINTIFF asserts that it was defendant MAJOR KEVIN GROOMS duty to order the ceasation of the assault and battery, and or attempted second degree murder of the fifty two year old plaintiff.

14.

UPON ARRIVING at the hosipital's sally port, defendant JOHN DOE number TWO advised defendant MARK SHARP that "We're at the sally port put your stick up," "someone may see us". The two cowardly defendants didn't want other employees, or persons to see their acts of cowardness i.e, beating plaintiff.

15.

MOMENTS BEFORE plaintiff entered the hospital's emergency entrance, JOHN DOE number TWO twisted plaintiff's finger on plaintiff's right hand deliberately, maliciously, and sadistically in an effort to break same.

16.

MEDICAL TREATMENT was administered to plaintiff at about 2:00 P.M., and plaintiff was admitted to the hospital's ward at about 2:45 P.M. for an overnight stay.

17.

Pg. 12

ON SUNDAY EVENING January 24, 2010 MAJOR STEWART HAWKINS from INVESTIGATIVE SERVICES at the Louisiana STATE PENITENTIARY arrived at plaintiff's hospital room, and requested plaintiff to strip naked, and the MAJOR photographed many areas of plaintiff's body.

18.

ON MONDAY January 25, 2010 at about 10:45 A.M., plaintiff was transported to INVESTIGATIVE SERVICES and met with Colonel BOBBY ACHORD who is the department's head. Achord advised plaintiff he knew plaintiff had been beaten, and asked plaintiff if he knew who had beaten plaintiff.

LT. Colonel GARY McDONALD presented plaintiff four photographs of correctional officers, and plaintiff identified one photograph as being one of the assailants. Colonel GARY McDonald asked plaintiff to sign and date that one photograph, and plaintiff did so.

UPON INFORMATION AND BELIEF, the photograph the plaintiff signed and dated is the photo of Captain MARK SHARP.

LT. Colonel TEMPLE assisted Colonel GARY McDONALD in interviewing the plaintiff.

MANY additional photographs were taken of plaintiff's battered and bruised nude body.

PLAINTIFF explained in detail to Colonels ACHORD, McDONALD, and TEMPLE, plaintiff's attempted simple escape, and the beating plaintiff received from correctional officers.

Pg. 13.

19.

ON TUESDAY MORNING JANUARY 26, 2010 plaintiff submitted a REQUEST FOR MEDICAL TREATMENT using HC-01 FORM A number 059932. IN plaintiff's request he stated multiple contusions, puncture wounds, and cuts from an attempted simple escape on JANUARY 24, 2010.

PLAINTIFF question why he was not receiving anti-biotics, and why plaintiff's elbows, feet, and left toe had not been X-RAYED on Sunday JANUARY 24, 2010.


20.

ON JANUARY 26, 2010 X-RAYS were taken and revealed plaintiff's fractured left big toe. The doctor told plaintiff that surgery to insert a pin in plaintiff's toe was a possibilty.

PLAINTIFF was prescribed pain relieving medication. MASTER SERGEANT GLENN HAWKINS a security off-cer at the hospital told plaintiff he hadn't seen an inmate beaten so bad after an attempted simple escape during his thirty years as a correctional officer.

PLAINTIFF asked MSGT. GLENN HAWKINS how did he know about plaintiff's injuries, and plaintiff having been beaten. MSGT. HAWKINS said " Roy my son is MAJOR STEWART HAWKINS with INVESTIGATIVE SERVICES, and I know STEWART took photographs of your injuries SUNDAY evening, and I spoke with STEWART about what happen to you, and the horrific photographic injuries of you."

Pg. 14.

21.

ON TUESDAY EVENING JANUARY 26,2010 plaintiff was con-
fined to the GAR Tier at Camp J commonly referred to
as the dungeon. UPON plaintiff walking to the shower
area that evening Sergeant PATRICK STROUD advised
plaintiff that he knew plaintiff had been beaten badly.
PLAINTIFF question Sgt. STROUD as to how did he know
plaintiff was beaten, and sgt. STROUD replied "I was
out there ROY when put you in that truck, and I saw
them beating you when the truck pulled away to the hospital.

22.

ON WEDNESDAY JANUARY 27, 2010 LT. Colonel ELI WILSON
of INVESTIGATIVE SERVICES visited with plaintiff and
took additional photographs of plaintiff's face. PLAINTIFF
thought that photographing his face again (3) three days
after plaintiff's injury was sustained, was suspicious.
   LT. Colonel ELI WILSON commented, "IT looks like your
face is healing"

23.

ON THURSDAY JANUARY 28, 2010, defendant Warden
Darrel, or Darryl VANNOY interviewed plaintiff at Camp
J. WARDEN VANNOY notified plaintiff that he had been
in FLORIDA on the day of plaintiff's attempted simple
escape, and told plaintiff he had seen the photographs
of plaintiff's injuries.
   WARDEN VANNOY told ROY saying, "I wouldn't have

wanted my son beaten like you were Roy." WARDEN VANNOY also told plaintiff that if he had been present the day of plaintiff's escape attempt no harm would've happen to plaintiff.

WARDEN VANNOY also told plaintiff he knew plaintiff was mad about the beating he had received, and suggested plaintiff take it easy for one more week, and then he and plaintiff would get together in an attempt to settle matter between themselves, so there wouldn't be any need for plaintiff to contact the F.B.I., or an attorney.

WARDEN VANNOY suggested to plaintiff saying," AT least let INVESTIGATIVE SERVICES complete their investigation before plaintiff contacted any outside-agents.

24.

ON FRIDAY JANUARY 29, 2010, plaintiff submitted an Administrative Remedy Procedure (ARP), or grievance relative to the deliberate, malicious, sadistic beating plaintiff had received from correctional officers. THAT (ARP) was received by the penitentiary's LEGAL PROGRAMS-DEPARTMENT on FEBRUARY 3, 2010.

25.

ON MONDAY FEBRUARY 1, 2010, plaintiff wrote and mailed letters to attorney RHONDA COVINGTON, F.B.I., and the U.S. JUSTICE DEPARTMENT in WASHINGTON D.C.,

Pg.16.

notifying each agent, or agencies of the assault and battery, and or attempted second-degree murder of plaintiff by correctional officers, and plaintiff requested an investigation of same from an agent or agencies.

26.

DURING the time periods indicated in paragraphs (1) ONE through (25) TWENTY FIVE above, and during later dates plaintiff disrobed and showed about (18) EIGHTEEN people his injuries. Some of those individuals are correctional officers, employees, and inmates of LOUISIANA STATE PENITENITARY. PLAINTIFF received many different responses from those individuals i.e., some gasped, and some cursed after viewing the malicious, and sadistic injuries plaintiff had received from officers.

27.

ON MONDAY FEBRUARY 1, 2010 plaintiff was seen by DR. ROB NANCE at the Camp J clinic. DR. NANCE examined, and or felt plaintiff's contusions, and or hematomas on his upper buttock and legs.

28.

ON TUESDAY FEBRUARY 2, 2010, WARDEN JOE LAMARTINEIRE, WARDEN LARRY CALVERT, and MAJOR CHAD OUBRE visited plaintiff at Camp J, and inquired how plaintiff's injuries were healing. WARDEN JOE LAMARTINEIRE told

plaintiff he had seen the photographs of his injuries, and had received plaintiff's letter expressing plaintiff's emotional anxiety that defendant Captain MARK SHARP may possibly sneak into Camp J during early morning hours, and attempt, or cause further injury, or silence plaintiff from revealling what defendant had done to plaintiff. WARDEN LAMARTINIERE assured plaintiff that defendant MARK SHARP wouldn't be allowed into Camp J and further harm plaintiff.

29.

ON WEDNESDAY FEBRUARY 3, 2010, WARDEN ORVILLE LAMARTINIERE and Colonel VICTORIO visited plaintiff at Camp J, and expressed their concern for WARDEN BUTLER, whom they believed may possibly get into a lot of trouble if plaintiff were to notify the F.B.I., because defendant WARDEN ROBERT BUTLER had not ordered defendant MARK SHARP to stop stomping, and or kicking plaintiff at the surrender site.

WARDEN LAMARTINIERE notified plaintiff that WARDEN VANNOY was going to visit plaintiff on MONDAY FEBRUARY 8, 2010, and attempt to settle matter with plaintiff relative to the beating plaintiff received.

30.

ON WEDNESDAY FEBRUARY 3, 2010 at about 7:00 P.M., WARDEN DARREL, or DARRYL VANNOY visited plaintiff

Pg. 18.

at Camp J, and told plaintiff that INVESTIGATIVE SERVICES was turning their file of the investigation over to the F.B.I. on THURSDAY FEBRUARY 4, 2010. WARDEN VANNOY gave plaintiff the name of the special agent as JASON ESLINGER, or similar last name, and opioned that defendant Captain MARK SHARP would be going down the road after the F.B.I. completed their investigation, and WARDEN VANNOY stated again, "I wouldn't have wanted my son beaten like you were ROY".

31.

ON TUESDAY FEBRUARY 9, 2010, plaintiff was transported to INVESTIGATIVE SERVICES DEPARTMENT and was interviewed by F.B.I. special agent JASON ESLINGER, or similar last name, relative to the beating plaintiff had received.

PLAINTIFF signed a release of his medical records to the special agent.

ColoNEl BOBBY ACHORD notified plaintiff that he had notified the F.B.I., and the WEST FELICIANA SHERIFF's OFFICE about the beating plaintiff had received.

32.

ON MONDAY MARCH 1, 2010, LT C. HOWARD told plaintiff he had seen defendant MAJOR KEVIN GROOM, an african-american, and defendant CAPTAIN MARK SHARP at INVEST-IGATIVE SERVICES being interviewed by the F.B.I. on

Pg. 19.

Wednesday February 10, 2010; and that LT. C. HOWARD was told that the two defendants were being questioned about the beating plaintiff had received.

33.

ON TUESDAY MARCH 9, 2010, Sergeant STROUD escorted plaintiff to the shower and told plaintiff he had told MAJOR STEWART HAWKINS of INVESTIGATIVE SERVICES that he knew who was in the back of the truck that had transported plaintiff to the hospital on JANUARY 24, 2010. Sergeant STROUD told plaintiff there was an african-american in the bed of the truck that day.

Sgt. STROUD told plaintiff that he told MAJOR HAWKINS that he didn't see anything relative to plaintiff being beaten as the truck pulled away from the surrender site. Plaintiff question Sgt. STROUD why he didn't tell MAJOR HAWKINS that he had saw officers beating the plaintiff in the truck, especially since Sgt. STROUD had told plaintiff on TUESDAY JANUARY 26, 2010 that he had seen officers beating plaintiff. Sgt. STROUD responded to plaintiff saying, "ROY you know how it goes, I have to live-around MARK SHARP."

34.

ON FRIDAY MARCH 19, 2010, plaintiff was seen by DR. WILLIAMSON at the Camp J clinic. DR. WILLIAMSON told plaintiff he didn't see a reference to plaintiff's

Pg. 20.

fractured toe in the medical records, but the doctor made a telephone call and heard a recorded dictation about same. The doctor explained the severity of the fracture to plaintiff's left big toe.

PLAINTIFF explained to the doctor of a burning-like pain to both upper rear legs, and pain, and some numbness to plaintiff's right hand, as well as toe pain.

### 35.

ON MARCH 20, 2010, plaintiff was transported to the penitentiary's hospital for additional X-RAYS of his left big toe, and right hand. PLAINTIFF has not been able to view those X-RAYS to determine the progress relative to his toe healing, although plaintiff has requested medical personnel to allow him to do same.

### 36.

ON MARCH 22, 2010, plaintiff submitted a REQUEST FOR MEDICAL TREATMENT on HC-01 FORM A number 059958 requesting to view those X-RAYS of his fractured toe, and obtain a verbal opinion from a doctor relative to same.

PLAINTIFF complained again about right hand pain, and some numbness to same. PLAINTIFF received no response to his medical request from medical personnel.

37.

ON MONDAY APRIL 5, 2010, plaintiff submitted a REQUEST FOR MEDICAL TREATMENT on HC-01 FORM A number 059392, and complained again of toe/hand pain, and headaches that may have been caused from two blows to plaintiff's head from defendant JOHN DOE number Two, a correctional officer. PLAINTIFF not only complained of toe and hand pain, but also of a burning-like sensation, or pain to his upper rear legs after walking.

38.

PLAINTIFF attest on APRIL 24, 2010 marked (3) three months since plaintiff was deliberately, maliciously, and sadistically beaten by correctional officers, and still has headaches, toe pain, hand pain, and a burning-like sensation to both upper rear legs.

39.

ON APRIL 27, 2010, plaintiff was seen by a doctor at the Camp J clinic, and was prescribed IDOMETHACIN, an antinflamatory to help relieve plaintiff's pain.

40.

ON THURSDAY MAY 6, 2010, plaintiff spoke with MAJOR STEWART HAWKINS, and MAJOR HAWKINS told plaintiff that those photographs taken of his injuries on JANUARY 25, 2010, revealed the severity more than photos the day before.

41.

ON MAY 10, 2010 plaintiff was transported to ST. Francisville, LA. for a court appearance relative to a criminal charge of attempted simple escape. PLAINTIFF was shocked, and had severe emotional stress and anxiety when on that day plaintiff became aware that one of the transport officers was Sgt. B. SHARP, a young man about 6'-4" tall and about 300 lbs. Sgt. SHARP identified himself as a first cousin to Capt. MARK SHARP one of the defendants who maliciously beat me on JANUARY 24, 2010. Sgt. WILSON an african american, and an elderly officer with the rank of master sergeant were also a part of the transport team that day. PLAINTIFF expressed great concern to all of the officers above, and concern to their supervisors i.e. their lieutenant and captain about a SHARP family member transporting on a road trip and carrying a gun.

42.

ABOUT a month before the MAY 10, 2010 transport of plaintiff; plaintiff on APRIL 15, 2010 during the early morning hours expressed emotional stress and anxiety to Capt. JAMES DAUZART and LT. COL. RANDY DUCOTE about plaintiffs reluctance to being transported to court on APRIL 15, 2010, especially after having been beaten by officers on the transport to the prison's

pg. 23

hospital on JANUARY 24, 2010. LT. CoL. DUCOTE advised or assured plaintiff that it would be alright to be transported that morning.

### 43.

ON MAY 12, 2010 plaintiff mailed (2) two letters: one to Warden Vannoy and one to the mental health or social worker clinician Dave Ankenbrand at LOUISIANA STATE PENITENTIARY expressing plaintiff's emotional stress and anxiety of having been transported by Sgt. B. SHARP to court on MAY 10, 2010. WARDEN Vannoy didn't respond to plaintiff's letter. During the week of MAY 16, 2010, plaintiff was able to speak with clinician Dave Ankenbrand during plaintiff's outside recreational yard period, relative to plaintiff's emotional stress and anxiety about having been transported to St. Francisville court by Sgt. B. SHARP.

### 44.

ON JULY 4, 2010 at about 8:55 A.M. on the SHARK 1-left tier at camp J, Sgt. William Holmes asked plaintiff how things were going with that. PLAIN-TIFF responded "are you asking me about the beating I received after my attempted simple escape", and Sgt. Holmes responded, "Yes". PLAINTIFF

asked Sgt. Williams how he knew plaintiff had been beaten by officers and Sgt. Williams stated, "a few days after your escape attempt you and I had a short conversation at the prison's hospital, and you told me that I don't ever want to get beat like that". I didn't remember that conversation with Sgt. Williams because during that time plaintiff was in a lot of pain due to the beating and blows to plaintiff's head.

## 45.

ON JULY 6, 2010 inmate CRAIG HAWKINS, D.O.C. No. 107714 told plaintiff at Camp J that he had heard about plaintiff's attempted simple escape when he had been housed at B-block at the main prison. Hawkins told plaintiff that when he first arrived at Camp J during JUNE of 2010, he heard inmates talking about how plaintiff had been beaten by officers after the attempted simple escape.

## 46.

ON JULY 7, 2010 Sgt. K JOHNSON escorted plaintiff to the Camp J medical clinic for an appointment with DR. WILLIAMSON. During that walk plaintiff asked Sgt. JOHNSON if he had heard prison officials and inmates discussing plaintiff having been beaten by

pg. 25

correctional officers. JOHNSON responded "of course, it's common knowledge".

### 47.

DURING JUNE of 2010 an inmate named QUANTRELL KELSON D.O.C. No. 445325 asked plaintiff if he was the inmate who got his ass whipped by correctional officers. Kelson told plaintiff that he had heard about the plaintiff's attempted simple escape, and that when Kelson was transferred to Camp J during April of 2010 he had heard a lot of inmates and correctional officers talking about how plaintiff had been beaten after surrendering. Kelson told plaintiff that the escape attempt and the beating of plaintiff was a big story at Camp J during April of 2010.

### 48.

ON JULY 8, 2010 inmate Craig Hawkins D.O.C. No. 107714 told plaintiff that Captain Mark Sharp had beaten inmate Vernon Mitchell at the main prison in 2009. Mitchell's nickname is "Fillet" or "Felo", and Hawkins advised plaintiff that Mitchell had filed an ARP, or possibly a lawsuit against Capt. Sharp for same. Hawkins told plaintiff he believes Sharp was transferred to Camp C after beating

pg. 26

Mitchell at the main prison.

### 49.

ON JULY 13, 2010, Andrea Denise Ferguson who is the commissary personnel at the prison's Camp J asked plaintiff if he had called the F.B.I. after plaintiff was beaten. Plaintiff responded "no", and told Ferguson that Colonel Achord with Investigative Services at the Louisiana State Penitentiary had voluntarily telephoned the F.B.I. after viewing plaintiff's injuries. Ferguson then told plaintiff she heard officers talking about the F.B.I. had questioned those officers who beat plaintiff, and how they had denied beating plaintiff. Ferguson told plaintiff that she had heard that the F.B.I. had showed the photographs of plaintiff's injuries to those officers.

### 50.

ON JULY 16, 2010, plaintiff began taking the anti-nflamatory Mobic for relief from a burning-like sensation to plaintiff's upper rear legs. DR. Williamson prescribed same and the Mobic prescription expires during July of 2011.

### 51.

pg. 27

ON JULY 17, 2010 at about 8:00 A.M. at Camp J's SHARK unit plaintiff spoke with inmate Rudy Gasper D.O.C. No. 125778 who was a tier walker and was housed at Camp D, Eagle 2. Plaintiff asked Gasper if he had heard about plaintiff's attempted simple escape. Gasper replied "Yes, and that he had heard an officer speaking about how BURL CAIN had beaten, or battered plaintiff also after peacefully surrendering." Plaintiff told Gasper that it is true relative to what he had heard about warden Cain battering plaintiff.

52.

ON JULY 19, 2010 at about 8:15 A.M. plaintiff was outside on the recreational yard at Camp J's SHARK unit and spoke with social worker clinician or mental health specialist Dave Ankenbrand. Ankenbrand informed plaintiff that he had received plaintiff's letter of July 15, 2010 and plaintiff's reference in that letter of plaintiff's emotional stress and anxiety relative to several issues, especially the beating plaintiff received. Ankenbrand told plaintiff that he would speak with DR. Reinbold the prison's psychiatrist and have DR. Reinbold possibly set an appointment for plaintiff to discuss several, or numerous issues.

53.

ON JULY 23, 2010 at about 7:30 P.M. Colonel Greg Foster was making his rounds and stopped at plaintiff's cell at the Shark Unit 1-left-6. Foster asked plaintiff, "What's the latest news with you and Sharp." Plaintiff advised Foster that plaintiff's ARP appeal was at Secretary's Office of the Louisiana Dept. of Corrections, and after the Secretary's ruling on same; plaintiff was going to let those liars (correctional officers) tell it to the judge and jury. Colonel Foster stated to plain- tiff, "those officers should have been fired, and those pictures showing your injuries is going to be hard for them to overcome." Plaintiff agr- eed with the col's statement and both agreed that the F.B.I. investigation may very well be continuing relative to same.

54.

ON JULY 24, 2010, plaintiff spoke with inmate Gary Ashley, D.O.C. No. 405290 soon after Ashley was placed at the SHARK 1-Left tier. Ashley told plaintiff that he had been housed at the Gator Unit during plaintiff's attempted simple escape from the Gator Unit. Ashley told plaintiff that he knew plaintiff had been beaten by officers and that he had heard a lot of inmates and officers discussing

same.

ON that same day plaintiff spoke with inmate Quennel Washington, D.O.C. No. 360325 whom stated, "I heard about your simple escape when I was at Camp C, Jaguar Unit, and when I was transfered to Camp J; I heard everybody talking about how you had been beaten badly by officers while handcuffed behind your back, and belly down in the back of a truck".

### 55.

ON JULY 29, 2010 at about 12:30 P.M., plaintiff visted DR. Reinbold the prison's pyschiatrist, MR. Dave Ankenbrand and another gentleman, both mental health, and or social worker clinicians at Camp J clinic. Plaintiff discussed with those clinicians, plaintiff's emotional stress and anxiety about not knowing the identity of some of the officers whom participated in beating plaintiff, and having been transported to court at St. Francisville, LA. by Sgt. B. SHARP. Additional issues relative to plaintiff having been beaten were discussed as well.

### 56.

ON AUGUST 1, 2010, plaintiff spoke with Sgt.

STROUD about plaintiff's continual burning-like sensation to plaintiff's upper rear legs, and infected left big toe caused by the beating plaintiff had received. Sgt. STROUD stated to his co-worker cadet L. Fredrickson, "they beat the hell out of ROY". Fredrickson stated to plaintiff, "I was working at Camp C for Capt. Sharp during your escape attempt and Capt. Sharp was part of the chase of you".

### 57.

ON AUGUST 9, 2010, at about 8:45 A.M., plaintiff spoke with inmate John Kleinpeter, D.O.C. No. 450642 outside during recreational hour. Kleinpeter told plaintiff that he had heard LT. M. Miller discussing plaintiff having been beaten. Kleinpeter also stated the same relative to hearing Sgt. Montgomery who usually works as a transport officer within the prison's complex. Kleinpeter also stated he had heard a lot of talk among inmates relative to same while housed at Camp J Bass Dorm.

### 58.

ON AUGUST 10, 2010 warden Jimmy Smith asked plaintiff how was he doing. Plaintiff responded that he was still healing. Smith said he knew Sharp beat plaintiff.

## VII. LEGAL CLAIM

PLAINTIFF's rights were violated under the Eighth (8th) AMENDMENT when the warden, and correctional officers at LOUISIANA STATE PENITENTIARY deliberately, maliciously, sadistically, and unjustifiably beat and assaulted plaintiff violating the law of the UNITED-STATES CONSTITUTION against cruel and unusual punishment, and some of the defendants were deliberately indifferent as they watched plaintiff being beat, which caused numerous physical injuries, and emotional injuries.

## VIII. PRAYER FOR RELIEF

WHEREFORE, ROY M. McLAUGHLIN, JR. respectfully prays for judgement in his favor and damages in his favor against all defendants in an amount sufficient to compensate him for the injuries, physical and emotional pain, and anguish suffered by plaintiff due to the deliberate, malicious, sadistic, and unjustifiable beating of plaintiff by defendants, and some defendants deliberate indifference to same as follows:

1. Compensatory damages in the amount of $350,000 against each defendant, jointly and severally.
2. Punitive damages in the amount of $350,000 against each defendant
3. A jury trial on all issues triable by jury.
4. Plaintiff's cost in this suit.
5. Any additional relief this court deems just, proper, and equitable.
6. Injunctive Relief

Date: AUGUST 30, 2010        Respectfully Submitted,

                                    Roy M. Mc Laughlin, Jr.

                      Address: CAMP J, CUD 4-R-6

                              LA. STATE PENITENTIARY

                              ANGOLA, LA. 70712

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at ANGOLA, LOUISIANA on AUGUST 30, 2010

                              Roy M. McLaughlin Jr.

                          ROY M. McLAUGHLIN, JR.

JUNE 24, 2010

Department of Public Safety
and Corrections / Assistant
Secretary of Adult Services
Internal Affairs, OAS
P.O. Box 94304, Capitol
Station Baton Rouge, La.
70804-9304

Roy McLaughlin
D.O.C. No. 399370
Camp J, Gator 2-R-6
La. State Penitentiary
Angola, La. 70712

ARP STEP TWO CASE NUMBER LSP-2010-0333
INTERNAL AFFAIRS, OAS.

TO WHOM IT MAY CONCERN,

MY ARP indicated above and dated January 29, 2010
was received on 2/3/2010 and accepted on 4/23/2010.
THE (40) forty day limitation for a response to my
ARP First STEP is exhausted, therefore I'm treating
the non-response as a denial of same.
THE secretary has supervisory jurisdiction, as
it relates to reviewing and responding to my ARP, that
I'm now appealing onto the secretary. Please respond
to this SECOND STEP of the ARP process within the
(45) forty five day limitation.

Sincerly,

ROY McLaughlin
Roy McLaughlin

CASE NUMBER:  LSP-2010-0333

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO:  <u>McLaughlin, Roy 399370</u>

<u>J GTR 3/R</u>
Living Quarters

Response to request dated 01/24/2010, received in this office on 02/03/2010

This request for remedy was received, logged, and set aside until today because you had other requests in the system at the time it was received.  Your request for remedy was handled in this manner pursuant to the Administrative Remedy Procedure.

In your letter of complaint, while housed at Camp J, you state that when you surrendered following an attempted escape you were physically abused by Captain Sharp. Captain Mark Sharp denies your allegations.  Institutional records reflect our investigative Services Department conducted a through investigation and concluded based on the doctors opinion and interviews of the eleven security officers, offender McLaughlin's allegations of abuse by Correctional officers and particularly by Captain Mark Sharp could not be substantiated.  No evidence is found to support your allegations.

Your request for Administrative Remedy is denied.

Prepared by: _____
Tami Brannon, Lt.

Approved by: _____
Joe Lamartiniere/AWIII/tlb

_____6-15-10_____          _____
Date                                                    Unit Head

<u>Instructions to Inmate:</u>  If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

☑  I am not satisfied with this response and wish to proceed to Step Two.

Reason:
I was maliciously, and sadistically beaten by MARK SHARP and others while handcuffed behind my back, and belly down, in the back of a pickup truck, after peacefully surrendering after an attempted simple escape.

_____                        _____
June 25, 2010                                               Roy Mc Laughlin   # 399370
Date                                                                    Inmate's Signature    DOC#

July 1, 2010

Department of Public Safety          Roy M. McLaughlin, Jr.
& Corrections                        Gator 3 1-bed camp
Internal Affairs, OHS                La. State Penitentiary
P.O. Box 94304                       Angola, La. 70712
Capital Station
Baton Rouge, La. 70804-9304

                    RE: ARP Status - Second Step

To Whom It May Concern,

     The First Step of my ARP ARP case no. LSP-
2010-0333 was deified on April 23, 2010.
     After (40), forty days had exhausted for
responding to same, I submitted a self constructed
ARP Step two case number LSP-2010-0333 dated
June 2, 2010 to the Secretary and Internal Affairs,
OHS, at Baton Rouge, La.
     Five days later, after submitting my self constructed
ARP because of a non-response deadline to the First
Step, I received a First Step Response form on
June 25, 2010. I completed that form by checking the
designated area that stated "I am not satisfied with
this response and wish to proceed to Step two. That
form was forwarded to the ARP screening officer in the manila
envelope on June 25, 2010 the day I had received it. Please
respond within the (45) forty five days.   sincerely, Roy

august 2, 2010

Dept. of Public Safety and
Corrections/Assitant Secretary
of Adult Services, Internal
Affairs, OAS
Baton Rouge, La. 70804-9304

Roy Mc Laughlin
D. O. C. No. 399370
Camp J, Shark 1-L-6
La. State Penitentiary
Angola, La. 70712

RE: Status of ARP No. LSP-2010-0333
Step two appeal to the Secretary.

TO WHOM IT MAY CONCERN,

I submitted a self-constructed ARP STEP TWO
appeal to the Secretary dated June 21, 2010, because
the (40) forty day limitation for a response from the
FIRST STEP had exhausted, therefore I treated the
non-response as a denial of same. Shortly, there
after, I received the denial of my FIRST STEP and
submitted that formal appeal to your office on
June 25, 2010.

IN a letter to your office dated July 7, 2010,
I requested that the secretary respond to my
STEP two APPEAL within the (45) forty five days
dictated by Dept. of Correction's policy.

Please expedite decision of same, because the
time limitation is nearly exhausted for same.

I'm very anxious to have those correctional officers
who are sadistic liars to testify in federal court.

Sincerely, ROY McLAUGHLIN

August 29, 2010

Dept. of Public Safety & Corrections      Roy McLaughlin, fr.
c/o Assitant Secretary - Headquarters      D.O.C. No. 399370
Internal Affairs, OAS                      Camp J, Shark 1-L-6
504 Mayflower                              La. State Penitentiary
Baton Rouge, La. 70821-04                  Angola, La. 70712

Dear Secretary,

During late June of 2010, I submitted my Step Two appeal relative to ARP case no. L.S.P.-2010-0333 to your office because of my disatisfaction of the denial from my First Step.

I originally submitted my ARP to the Legal Programs Dept. on January 29, 2010, and it was received on February 3, 2010 and accepted on April 23, 2010 by that Department.

On July 7 and August 2, 2010 I wrote letters to Internal affairs, OAS requesting the status of my Step Two appeal, and notified that department, and the Secretary of their policy to responsed, or answer my appeal within (45) Forty Five days. I've received no answer, or response, nor an notification of extension of time filed by your office to answer my Step two appeal. Your office policy and procedure of (45) Forty Five days to respond to my ARP Step two appeal has clearly exhausted. It has been nearly 7 months since I first submitted my ARP and I have'nt received a final response to same; although your policy states that the process from filing an ARP to a response from an APP Second Step appeal be no more than 90 days.

Sincerely, Roy McLaughlin

ANGOLA, LA
SEP 1 2010
70712.9993

Legal / Privilege Mail !

Clerk of Court
Middle District of Louisiana
777 Florida Street, Ste. 139
Baton Rouge, LA. 70801

/ McLaughlin
.c. No. 399370
MP 1, Cuda 4-R-6
. State Penitentiary
GOLA, LA. 70712



PRIORITY MAIL
UNITED STATES POSTAL SERVICE®
www.usps.com
Label 107R, February 2008